CHARLES A. LUCKIE, Associate Judge.
This is an appeal from a final decree dismissing a suit for specific performance; the suit having been filed in November, 1955. Appellants, Otto J. Matousek and Charles H. Williams, sued appellees, Albert Sidney Cooper and his wife, Katherine Dreese Cooper, for specific performance of a contract entered into between Matousek and Coopers, whereby the Coopers agreed to sell certain land to Matousek. By oral agreement thereafter, Matousek conveyed a one-half interest in the contract to Charles H. Williams. After the taking of testimony the Chancellor entered a decree dismissing the complaint on the ground of laches, and plaintiffs have taken this appeal.
The land involved was originally owned by Henry S. Dreese. At his death in 1914, a life estate passed to his wife and the remainder vested equally in his five children, of whom defendant-wife was one. The wife of Henry S. Dreese died sometime prior to 1952, and upon her death the defendant-wife acquired a one-fifth interest in the property. The taxes on said land became delinquent in 1930 and in 1942 the defendant-husband paid all of the delinquent taxes and purchased a tax certificate covering the property and thereafter paid all taxes. The defendant-husband, apparently being unfamiliar with real estate matters, assumed he had thereby acquired a marketable title.
On March 26, 1952, the Coopers and Matousek entered into the involved contract, at which time the defendant-husband forwarded all the tax receipts and tax certificates stating that he was giving them “all pertinent papers I have for this property”. The contract of sale provided, among other things, that the sellers were to provide an abstract showing their title to be good and marketable and, in the event title should not be found good and marketable, they agreed to use reasonable diligence to make it good and marketable and would have a reasonable time in which to do so. The contract further provided that in the event title could not be made good and marketable within a reasonable time and after reasonable diligence on the part of the sellers, the sellers should return the $250 money deposit and, thereupon, should be released from obligations under the contract, or in the alternative, upon request of the purchaser, the sellers should deliver the title in its existing condition.
When the condition of defendants’ title became known, defendants attempted to get quit-claim deeds from the other Dreese *67 heirs, but such effort failed. For family reasons, defendants refused to institute a suit to quiet title against the brothers and sisters of Mrs. Cooper, though it is doubtful that such a suit would have been successful. Failing to obtain quit-claim deeds, the defendants notified Matousek in July of 1952 that they were unable to furnish a marketable title and were considering the contract rescinded. At the same time the Coopers directed their agent to return the deposit money and requested the return of all of their papers. Matousek made no reply until October, 1952, when he demanded good title.
Apparently little or no contact was maintained between the parties from October, 1952 until July, 1955, at which time Matou-sek sought a conveyance of whatever interest the Coopers had in the property, which request was declined by the Coopers. There is some indication that Matousek disclaimed further interest in the property during the period of inactivity, but in any event, nothing concrete occurred one way or the other until July, 1955, nor has the deposit of $250 ever been returned to Ma-tousek. There is also evidence that between the rescission of the contract in July, 1952 and the institution of the suit in November, 1955, the property increased slightly in value.
Based upon the above facts, the final decree dismissed the suit and required plaintiffs to deliver the abstract and other papers, consisting primarily of tax receipts and tax certificates, to the defendants upon payment by the defendants of $107 for the cost of the abstract. Appellees raise several questions on this appeal but the principal questions may be grouped into one: whether the Chancellor erred in holding that the suit should be dismissed because of laches.
As noted above, the case here is one for specific performance. This Court has previously held that specific performance is not a right vested in a party, but is a matter of sound judicial discretion. In the case of Humphrys v. Jarrell, Fla.App., 104 So.2d 404, 410, this Court said:
“Specific performance is an equitable remedy and is not granted as a matter of right or grace but as a matter of sound judicial discretion vested in the chancellor governed by principles of law and equity applicable to the particular facts or circumstances. The exercise of this discretion by the chancellor must be legally sound and not arbitrary. Moreover, the granting of a final decree in a specific performance suit requires that the proof be clear, competent, and satisfactory. This test imposes a greater degree of proof than that required under the preponderance of evidence rule. See Topper v. Alcazar Operating Co., 1948, 160 Fla. 421, 35 So.2d 392; Todd v. Hyzer, 1944, 154 Fla. 702, 18 So.2d 888; Williams v. Neeld-Gordon Co., 1923, 86 Fla. 59, 97 So. 315; and Miller v. Murray, Fla.1953, 68 So.2d 594.”
The Chancellor was fully justified by the record in finding that appellants’ delay of more than three years was unexcused. An unexcused delay for such a period of time could well raise a presumption of abandonment and a consent to the rescission of the contract. Promptness of action is especially necessary in cases of property which is particularly subject to fluctuation in price, as Florida land has been for the past several years. To permit such lack of diligence in such cases would be to encourage delay and favor speculation, and would permit a party to wait until there is a certainty of advantage to self or to hold back and speculate until such time as there is a clear advantage.
As said in the case of Marshall v. C. S. Young Const. Co., 94 Fla. 11, 113 So. 565, 567, 55 A.L.R. 662: “The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court *68 is passive and does nothing.” In addition, there is an ancient equity maxim to the effect that equity aids the vigilant and not those who slumber on their rights. There is no established rule concerning the definition of “diligence” but each case must depend upon its own circumstances. The maxim being based on “equity”. See the case of DeHuy v. Osborne, 96 Fla. 435, 118 So. 161, 166, where it is said:
“In specific performance, no general rule applicable to all cases as to what will and what will not constitute laches can well be formulated. The existence or the absence of laches must depend upon the facts, or what is commonly referred to as the ‘equities,’ under all the circumstances involved, as specific performance is not a matter of strict right, -but rests within the sound discretion of the court, a discretion, however, which is not to be exercised capriciously or arbitrarily, but according to established principles of equity as applied to the particular facts involved. Rose v. Henderson, 63 Fla. 564, 59 So. 138; McCrillis v. Copp, 31 Fla. 100, 12 So. 643; McCaskill Co. v. Dekle, 88 Fla. 285, 102 So. 252.”
Based upon the above facts and circumstances this Court cannot say that the Chancellor abused his discretion in refusing the relief sought by the appellants and, therefore, the decree of dismissal should be affirmed. It does appear, however, that the Chancellor should have ordered a return of the deposit of $250. Likewise, the appellants, having paid for the abstract of title, should be allowed to keep the abstract or, if they so desire, deliver it to the appel-lees who should then be required to pay the costs thereof. Except as herein stated, the decree will be affirmed.
Affirmed in part and reversed in part for further proceedings consistent with this opinion.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.