M. D. McCUTCHEON v. NATIONAL ACCEPTANCE CORPORATION, FRANK D. NEWMAN and BETTY LOU NEWMAN, *et vir*.

197 So. 475
En Banc
Opinion Filed July 12, 1940
Rehearing Denied August 2, 1940

*William J. Pruitt*, for Plaintiff in Error;

*Yonge & Anderson*, for Defendants in Error.

CHAPMAN, J.—On October 26, 1939, plaintiff below, plaintiff in error here, filed in the Circuit Court of Dade County, Florida, a bill of complaint praying for specific performance of a contract or agreement to convey to him 700 shares of capital common stock in the National Acceptance Corporation for and in consideration of past work or performance of certain duties and for future service to be rendered within one year from October 17, 1938. It is contended that the plaintiff accepted the offer or proposal made by the defendants based on letters, viz.:

"October 17, 1938

"Mr. M. D. McCutcheon,
"728 N. E. Second Avenue,
"Miami, Fla.

"Dear sir:

"As President of the National Acceptance Corp. I hereby promise to deliver to you within one year from date Seven hundred Shares of Capital Common Stock in the National Acceptance Corp. for and in consideration of your remaining with this corporation for the next succeeding year from date.

"It is understood that any time there is Common Stock turned into the Corp. thereby becoming treasury stock, it is reissued to you immediately.

"It is further understood that if the National Acceptance

Corp. discharges you without cause, within one year from date, then the entire amount of stock promised to be delivered by this agreement is to become due and you are not to lose any rights to such stock by virtue of any such discharge.

"It is further understood that if you leave this Corp. for any cause except physical incapability, then this agreement is to become null and void.

"Yours truly,

"NATIONAL ACCEPTANCE CORP.
"By Frank D. Newman, President."

"October 17, 1938

"Mr. M. D. McCutcheon,
"728 N. E. Second Avenue,
"Miami, Florida.

"Dear sir:

"If the National Acceptance Corp. fails to deliver to you the Seven Hundred Shares of Capital Common Stock in the National Acceptance Corp. as agreed by letter of even date, then I personally within one year of date will deliver to you Seven Hundred of said shares or any difference between the *actual* number of shares delivered to you and those agreed to be delivered to you.

"Very truly yours,

"Frank D. Newman."

"Oct. 18, 1938

"To Whom it may concern:

"I have examined the books and records of National Acceptance Corp. and find that Frank Newman is the owner

of 1,270 Capital Common Stock of the National Acceptance Corp.

"W. H. Bridwell
"Notary Public
"My Commission expires Feb. 11th, 1942."

It was alleged that on October 17, 1938, Frank D. Newman was the owner of 1,270 shares of the capital stock of the National Acceptance Corporation and the total number of shares then outstanding of the corporation was 2,500, and that said Frank D. Newman, in November, 1938, fraudulently and without consideration, and for the purpose of evading payment transferred to his said wife, Betty Lou Newman, 1,260 shares of the capital common stock of the said corporation.

The plaintiff continued the performance of his agreement with Frank D. Newman and the corporation by working for approximately nine months and the defendants declined and refused to transfer said stock or any portion thereof according to the terms of the agreement, but 300 shares of stock was transferred to the plaintiff and immediately thereafter plaintiff filed suit to impress a lien upon the stock alleged to have been fraudulently transferred to Betty Lou Newman, wife of Frank D. Newman. The plaintiff was discharged when the said suit was filed.

The defendant corporation loaned money on salaries, automobiles and furniture and the plaintiff had had fourteen years of experience and as a result was an expert in the management of a business as operated by the defendants and his first work therewith was for a small salary, but the business grew and prospered as the result of the skill and expert management of the plaintiff. The National Acceptance Corporation was a small company, the total number of common stock issued was 2,500 shares and the said stock

cannot be purchased in the open market as are shares of stock of larger corporations. The plaintiff, notwithstanding his said discharge by the defendant, now is ready, willing, and able to perform the conditions and agreements entered into but was denied the right so to perform by the defendant when the plaintiff was by the defendant discharged.

The defendants each filed motions to dismiss the bill of complaint on the grounds: (a) there is no equity in the bill; (b) it does not appear from the bill that the plaintiff has performed the contracts described; (c) the suit was prematurely brought; (d) the plaintiff left the corporation and that the agreement sued upon is null and void; (e) it does not appear that the obligations sued upon are those of the National Acceptance Corporation; (f) that Betty Lou Newman is an improper party defendant. The lower court sustained the motions to dismiss and an appeal has been perfected to this Court.

One of the grounds of each motion to dismiss is that there is no equity in the bill of complaint. It is settled law in Florida that where a complainant is entitled to any relief under the allegations of the bill, the same should not be dismissed for want of equity. See Matthews v. Wilkerson, 132 Fla. 753, 182 So. 439; Masser v. The London Operating Co., 106 Fla. 474, 145 So. 72, 79.

Counsel for plaintiff in error contends that the bill of complaint shows a written contract existing between the parties and that the allegations are sufficient to support a decree of specific performance and that there is equity in the bill. Counsel for defendants contend that where an employee wrongfully sued the corporation employing him that equity will not compel the performance of a contract to transfer to said employee by the corporation 700 shares of its capital stock in consideration of past services and

future services to be performed by the employee in behalf of the corporation within one year.

This Court, in the case of Baruch v. Haggerty, Inc., 137 Fla. 799, 188 So. 797, had before it a suit for specific performance similar to the case at bar. The bill of complaint alleged that Baruch and associates entered into a contract with Haggerty for the sale to them of 50 per cent interest in the W. B. Haggerty, Inc., in which corporation W. B. Haggerty owned the entire capital stock of 100 shares, having no nominal or par value. The consideration to be paid for the transfer was $50,000.00, which was to be used in the capital structure of the business and was to be paid, viz.: $10,000.00 on signing the agreement; $15,000.00 within 30 days from the date of the agreement, and the remaining $25,000.0 upon demand. It was agreed that upon payment of the first $10,000.00, 10 per cent of the capital stock of the corporation would be issued; on payment of the next $15,000.00 15 per cent of the stock would then be issued; and on the payment of the final $25,000.00 a further and final 25 per cent of the stock would be issued to Baruch and his associates. It was further alleged that the corporation was a closed one, the seller owning all the outstanding stock and that none of the stock had been put on the market and had no market value and the stock had no fixed or par value; the stock could not be obtained on the open market and had never been offered to the public for sale and the value of the stock consisted of the copyright trade label and its future development in marketing products under the label and that the damages sustained by reason of the failure of the defendant to comply with the terms of their contract of sale are incapable of determination and the value was wholly conjectural. The Court said:

"The second question presented is whether or not the remedy of the seller against the purchaser, under this con-

tract, is in equity, or whether the remedy at law is full, adequate and complete, and should be pursued.

"Corpus Juris states the rule as to whether or not equity will take jurisdiction in this class of cases, in the following language:

" 'In the United States the authorities are in conflict as to specific performance of contracts concerning stocks. In general, a bona fide contract for the sale of actual stock will be enforced in every case in which specific performance would be granted if the contract related to any other kind of personal property. Hence, specific performance of a contract concerning stock usually will not be decreed unless damages at law are clearly incomplete and inadequate; but where justice demands it, a contract to sell stock will be specifically enforced. Further, where the shares of stock possess peculiar and unusual value, specific performance will be granted. The rule that specific performance of a contract to deliver property not in existence at the time the contract was made will not be granted does not apply to a contract for the sale of shares of stock to be issued. Where damages at law would be inadequate, specific performance of a contract to purchase corporate bonds may be decreed.' 58 C. J. 1040, Sec. 265.

" 'Where the contract concerns stock commonly bought and sold in the market, the value of which is readily ascertainable, or which is fixed, and the stock is readily obtainable, and there is no particular reason why the remedy should be required, specific performance will not be decreed.' 58 C. J. 1041, Sec. 266.

" 'Where the stock has no market value, and its value is not fixed, and cannot be readily ascertained, and the stock cannot be readily obtained otherwise, or there is a particular

reason why the remedy should be granted, specific performance may be granted.' 58 C. J. 1041, Sec. 267.

"Ruling Case Law states the rule in the following language:

" 'As a general rule a contract to buy a specified number of shares of the capital stock of a corporation at a price designated will not be specifically enforced in equity at the suit of the seller, since his remedy at law is adequate. No special value is deemed to attach to any particular shares of stock over other like shares, and the damages which may be obtained at law are considered adequate to enable the plaintiff to procure stock in the open market equivalent to that which he would have been entitled to receive under his contract. But where no stock is obtainable in the open market a different situation is presented. In such a case the remedy at law may be wholly inadequate and for this reason a contract of sale may be specifically enforced either at the instance of the buyer, or the seller. So it has been held that specific performance may be had of a contract to deliver stock, the pecuniary value of which is not readily ascertainable, or where the stock has no market value.' 25 R. C. L. 298, Section 110.

"This remedy, if available to the purchaser, is likewise available to the seller, because relief is based upon mutuality of remedy. On this subject, Corpus Juris contains the following:

" 'Although there is contrary authority, specific performance of contracts for the sale of chattels and things in action has been founded on the principle that where the purchaser might obtain the remedy, the seller is likewise entitled to it. Thus, the relief has been granted on such ground in the case of sales of stocks, patents, annuities, and debts.' 58 C. J. 1044, Sec. 275."

In the case of Price v. Gordon, 129 Fla. 715, 177 So. 276, one of the essential questions involved was whether or not a court of equity would restore personal property of a peculiar sort and value to the owner when the possession thereof is unlawfully retained and where a remedy at law is not full, adequate and complete. This Court held that equity will intervene and on equitable grounds decree the specific delivery of personal property by one not lawfully entitled to the possession where the property is of such peculiar value that full compensation in damages cannot be obtained in an action at law. See Morgan v. City of Lakelnad, 90 Fla. 525, 107 So. 269; McCollom v. Morrison, 14 Fla. 414.

The case of Wood v. Hammel, 132 Fla. 164, 181 So. 145, was one in equity seeking the specific performance of an oral agreement to make a will. The decedent possessed property valued at some $20,000.00 and was in bad health and she agreed to make a will giving all her property to the plaintiff for and in consideration of the continuous care and daily attention by the plaintiff of the decedent until her death, which occurred some few days thereafter. This Court held that past services can or may be a lawful consideration for such a contract, but equity will refuse a decree of specific performance of a contract unless it was strictly equitable and that the consideration rendered the decedent by the plaintiff was only a few days of her personal services and such a consideration would be grossly inadequate and inequitable to enforce the contract requiring the payment to the plaintiff of some $20,000.00 for such a small and insufficient consideration. See Calumet Co. v. Oil City Corp., 114 Fla. 531, 154 So. 141; Frank E. Wood Co. v. Charles Broadway Rouss, Inc., 110 Fla. 16, 147 So. 855.

The case of Graham v. Herlong, 50 Fla. 521, 39 So. 111, was a suit in equity to require Graham to deliver to Herlong

certain shares of stock which had been pledged to secure the payment of described indebtedness. The bill of complaint was held insufficient because it was not alleged that the stock was of peculiar value and character, the loss of which could not be fully compensated in damages. The allegations of the bill in the case at bar are not subject to this criticism.

The rule enunciated by this Court in the case of Baruch v. Haggerty, Inc., *supra,* appears to be in accord with the weight of American authority in holding that contracts for the sale of stocks that have no recognized market value, or which are not readily procurable except from the defendant will be specifically enforced. See Pomeroy on Specific Performance of Contracts (3rd ed.) pages 52-3, par. 19, and authorities cited; Smurr v. Kamen, 301 Ill. 179, 133 N. E. 715; 22 A. L. R. 1023, and annotations appearing beginning at page 1038. We hold that the bill of complaint contains equity.

The bill of complaint alleged that some 18 days after the parties entered into the contract the defendant Frank D. Newman, the president of the corporation and the owner of a majority of the 2,500 shares of the stock thereof, transferred or caused to be transferred to his wife, Betty Lou Newman, 1,260 shares of the common capital stock, the result of which, so it is argued, defeated the purpose and terms of the contract to sell 700 shares thereof to McCutcheon. The plaintiff McCutcheon continued to perform his obligations created by the contract of sale and demanded performance of the defendant Newman, which he in part performed, but declined a further compliance therewith, when plaintiff McCutcheon filed suit to impress a lien in his behalf on the stock transferred to Betty Lou Newman, and upon the filing of this suit the plaintiff, after working some eight months under the terms of the contract and was ready,

able and willing to carry out the contract, was discharged by the defendant. The fact that the plaintiff McCutcheon filed this suit, it is contended, was a sufficient legal reason on the part of Newman to declare the contract of sale null and void. We cannot agree to this contention, but think it a circumstance or reason to be considered by the court along with many others when settling the equities between the parties when the evidence is adduced on final hearing.

The enforcement in equity of specific performance of a contract is not a matter of right or of course, but the enforcement thereof rests in the sound judicial discretion of the court, controlled by acknowledged and well established principles of equitable jurisprudence. See Speisberger v. Newman Realty Co., 125 Fla. 342, 169 So. 859; Scott v. City of Venice, 123 Fla. 772, 167 So. 654; Trimble v. Hart, 130 Fla. 396, 177 So. 710.

The order dismissing the bill of complaint appealed from in this case is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN and THOMAS, J. J., dissent.